Reese, J.
delivered the opinion of the court.
At the November term of the Williamson circuit court in the year 1839, four judgments were rendered against James Anderson and Henry Baldwin, jr., one in favor of Robert M. House, one in favor of Hopkins & Brothers, one in favor of William R. Saunders, and one in favor of William P. and Edwin L. Thomas. Upon all these judgments, executions issued, and were levied by William Harrison, sheriff of Williamson county, upon lots Nos. 102, 103 and 127, in the town of Franklin, as the property of James Anderson, one of the defendants in the executions, and on the 7th day of March, 1840, the property was exposed to public sale by the sheriff, and the complainant Reid became the purchaser, for the sum of sixteen hundred dollars. Complainant had made a private agreement with Anderson, to purchase the property from him, and before the levy and sale, had been put into possession of the premises; but as Anderson was embarrassed, it was deemed proper by them, in order to pass the title, that there should be a sale by the sheriff Anderson was in fact owner of lot No. 102, and of small portions *577 of lots Nos. 103 and 127. But he believed himself to be owner, also, of one-half of lot No. 126, of which he had been in possession for some years, having purchased at a chancery sale, in which some mistake as to the description of the premises probably occurred. That portion of lot No. 126 was enclosed as part of his premises, and upon it stood the stables, carriage house, crib, &c., and he, the sheriff, and the complainant, all believed at the time of the sale and levy, that it was embraced and described in the terms used, namely, “lots 102, 103 and 127.” The abstraction from the premises of the portion of the lot No. 126, in question, with the improvements thereon, would interfere greatly with the use and enjoyment of the property, and would diminish its value one-third.
At the September term of the United States circuit court, for the district of Middle Tennessee, at Nashville, four judgments were obtained against the said James Anderson, and the said Henry Baldwin, Jr., one in favor of Foster and Eaton, one in favor of Hopkins and Hall, one in favor of Marseills and Martín, and one in favor of James A. King.
All these judgments, as well those in Williamson circuit court, as in the court of the United States, were founded on claims against Anderson & Baldwin, as partners in a mercantile concern, except, that of Robert M. House, which, although against Anderson & Baldwin jointly, was for the separate debt of Anderson, Baldwin having become bound and liable as his accommodation endorser.
After the sale, the complainant gave to the sheriff, a check upon a bank for the amount of his bid, but becoming aware of the existence of the Federal court judgments, and being advised that they might create a prior and preferable lien on the property sold, and learning the mistake of the sheriff, of himself, and of the defendants, in the executions, as to the description of the property levied on and sold, he gave notice to the cashier not to pay the check, and it was not paid. And under these circumstances, he filed his bill against all the parties, herein named, to have the sale set aside, and a new sale ordered, and for general relief.
And the question which first presents itself, is, whether the complainant is entitled to the relief prayed, upon the case made in the record ?
It has been strongly insisted that he. is not, upon the ground, mainly, that the rule of caveat emptor, emphatically applies to purchasers at sheriff’s sale, and for this many authorities have been *578 cited. Unquestionably that rule does, and ought to apply to such sales, in general. The purchaser must risk the title. He can get no warranty as to that, and if it turn out that he was mistaken, he must bear the loss, and cannot be relieved here.
And, even, if he were mistaken in a matter of fact, relating to the property sold, arising from misdescription or otherwise, and the money has gone into the hands of judgment creditors, it might be difficult to give him relief, because from the relation of the parties, and the circumstances of the case, it might be difficult to affect their consciences.
But where, as in the case before us, a plain mistake, not as to the title, but as to the property levied on and sold, was made by the sheriff, the defendants in the executions, and the purchaser, all of them supposing, that the land included in the dotted lines of the survey, set forth in the record, had been levied on and sold, and was comprised by the terms of description used, and where the mistake so materially effects the value of the property actually sold, and where, before the money has been paid, the purchaser applies to set aside the sale, in such a case, and under such cii'cumstances, we think he is entitled to relief. Who can object to it? Not the defendant in the execution, because he led the officer and the purchaser into the mistake.
Can judgment creditors successfully resist the application, and conscienciously insist, that money bid under such circumstances, and not yet paid to them, should yet be received?
We think they cannot. In the case of the Ontario Bank vs. Lansing, 2 Wend. Rep. where on the sale of property, under a Ji. fa., a plaintiff inadvertently bid a less sum than the amount of his execution, the sale on his application was set aside, and a new sale ordered, because under their redemption law, as against á junior judgment creditor, he could not, in his actual circumstances, have enjoyed the advantages to which it had been his purpose to entitle himself.
In the case of Mulks vs. Allen, (12 Wen. 253,) the property was bid in at $840, under the belief and impression of the purchaser, and of the officer conducting the sale, that the premises described in the advertisement, consisted of a woollen factory, owned by the defendant, worth upwards of a thousand dollars, whereas it was discovered, that the premises only comprised a garden spot, worth only one hundred and fifty dollars. It was alleged, that the officer *579 was misled by the defendant in the execution, when applied to for information, respecting his real estate. The defendant, however, denied all intention to deceive.
The court set aside the sale, remarking, that whether the defendant did, or did not, intend to mislead the plaintiff and the officer, there was no doubt they were deceived by the representations he made. These, indeed, were cases at law; but in the case of Lansing vs. Quackenbush, (5th Cow. 38,) the court of law refused to correct the endorsement on the execution, when property had been sold, which did not belong to the defendant, because a court of equity was deemed a more proper tribunal to grant relief. And the authority of the cases we have referred to, are the stronger, because they occurred at law: a court of chancery being no doubt, in general, the more appropriate forum for correction and relief in such cases. Each case must, indeed, be determined, very much upon its own circumstances, and the time of the application, and the attitude of the parties before the court. In the case, however, before us, we are of opinion, both upon principle and authority, that the complainant is entitled to the relief prayed for.
It becomes necessary, that we should determine, in the second place, the question of priority, presented in the record, between the several defendants in this bill, with a view to the proper distribution of the proceeds to arise from a re-sale of the premises. This, as to one class of the defendants, will depend upon the construction, which may be given to the provisions on the subject of the lien of judgments, contained in the act of 1831, ch. 90. It will be seen by a reference to that act, thatits leading object, as to deeds of bargain and sale, mortgages and other instruments, required to be registered, was to abolish all relation, between the registration of the instrument and its date or execution, which had previously existed, and to make thenceforward, the registration itself an effective part, as it were, of the execution of the instrument, giving the right to him who should first register, and enabling all persons thereafter safely to purchase, so far as conveyances were concerned, by simply inspecting the register’s office of the county in which the property might lie. And if it had been the purpose of the legislature to abolish the lien of judgments, in all cases, which they had competent power to do, this would have been sufficient. But such was not their purpose; they intended that a modified lien by judgments, for a limited period, should con *580 tinue to exist, and the question with them, was, how this should be effected, so as to harmonise with the general scope of the bill, and not to defeat their leading purpose, which was, that all might readily know from whom they could safely purchase property. This was effected by the provisions contained in the 6th, 7th and 8th sections.
In the 6th section, they declare, that “the lien of a judgment and-execution (as hereinafter regulated) shall have preference to any deed or bond, or other instrument not registered, at the time the said lien of said judgment or execution attached.”
The following sections contain the regulations referred to, showing how and where said lien should attach.
Sec. 7. “All judgments obtained in any court of record in this State, shall be a lien upon the debtor’s land from the time said judgment vras rendered; provided, said judgment is rendered in the county where the debtor resides at the time of its rendition, and provided, an execution is taken out upon said judgment and the said land sold within twelve months after the rendition, unless,,r &c.
Sec. 8. “When judgments are rendered in any other county? than that in which the debtor resides, the lien of the judgment shall take effect only from the time when a certified copy of said judgment, shall be registered in the county where the debtor resides,” &c. and “all judgments so certified and registered shall be good and effectual from said time,” &c. The question is, whether judgments rendered in the Federal courts are included in these provisions.Obviously they are included by the terms used, “all judgments obtained in any court of record in this State,” and they are as certainly embraced by the purpose and policy of the statute. If they are not embraced by these terms, and the lien be not given to them by this or any other Tennessee statute, then they have either no lien at all, or else a lien, uncircumscribed in point of time, or territory. The object of the statute was, that by going to the county where the land lies, a purchaser might know whether there were prior conveyances or mortgages, and by going to the county where the owner resided, he might from the courts of record there,- and from the register’s office, know whether the lien of any judgment had attached, and thereupon safely buy.
But if Federal court judgments have a lien without the registration of a certified copy of the judgment in the county of the debt- *581 or’s domicil, then it would be nescessary for the purchaser, in order to buy safely, to examine the records of the Federal courts in the three divisions of the State. But it is argued that, with reference to the jurisdiction of the federal courts, it may be said of a debtor, who resides in Williamson county, that he resides in the county in which the judgment was rendered. Of this distinction it may be observed, not only, that it contradicts the letter, and contravenes the objects of the statute, but that it is too attenuated to be either very tangible or very visible. Besides, it would alike apply to the judgments of the supreme and chancery courts; and as to the latter we have a legislative assurance that it does not apply. For some one having doubted, perhaps,. and without cause, it would seem, whether, by the term “judgments,” decrees in the chancery court were embraced, the act of 1833, ch. 92, sec. 6, was passed, which provides, “that decrees rendered in chancery for the payment of money, shall be a lien upon the lands of the person or persons against whom the same may be rendered, in like manner and under the same provisions, restrictions and limitations as judgments at law, by the 7th and 8th sections of the act which this is intended to amend.” In truth, the lien of judgments by our system is not predicated upon the more extensive or more limited territorial jurisdiction of the court rendering them. The records of the court rendering the judgment constitute a lien upon the lands of the debtor, wherever situated, without further registration, if the county where rendered contains the domicil of the debtor; if it does not, then a certified copy of the judgment, registered in the county of the domicil, creates a lien upon the land of the debtor, wherever situated.
Such is our view of the statute; and the question is certainly free from all doubt. But it has been suggested, thrown out rather than pressed before us in argument, that to require the registration of a certified copy of federal court judgments in the county of the debtor’s domicil, in order to the creation of an effective lien, would improperly interfere with the action and process of those courts.
But it is an axiom of the jus gentium, as fundamental as it is familiar, that to prescribe the rules for the transfer of real property, by the act of the owner, or by the operation of law, falls peculiarly and exclusively within the competency of the local government.
*582 The lien of a judgment is one of the rules for such transfer by operation of law. It is a step towards, it is the inception of such transfer. It is a law of title; it is a rule of property; congress have not, nor do they claim any power whatever over the subject. To require a creditor in a federal court judgment to do that which- is required of a creditor in a State court judgment, namely, to register a copy of such judgment in the county of the debtor’s domicil, in order to the creation of an aifctive lien, is not to interfere with the process of the U. States courts or to control their officers in its execution. As well might our laws on the subject of registering deeds of conveyance, be regarded as creating such interference as our law on the subject of registering judgments. They are subjects peculiarly and exclusively within our own competency. Upon principle this is so unquestionably true, that it seems scarcely necessary to attempt to fortify it by a reference to the 34th section of the act of Congress of 1789, or to adjudications in the courts of the U. States. The elaborate judgment by the late chief justice Marshall, in the case of Wayman vs. Southard, 10th Wheat. 1, was in a case arising under the Kentucky endorsement and reple-vin law, which sought to regulate and control the officer in the execution of his process. But many observations made in that case, tend to establish a marked distinction between that case and the principle of such a case as is now before this court. The case of Ross vs. Duval, 13 Peters, 45, arose upon an act of Virginia, passed in 1792, providing that “judgment within any court of record within the commonwealth, where execution hath not issued, may be revived by scire facias, or an action of debt, brought thereon, within ten years next after the date of such judgment, and not after.” It was held by the circuit court of the U. States for the district of Virginia, not to be obligatory upon that court.
But the supreme court of the U. States say, the act in question is substantially a limitation on judgments. It is not, therefore, an act to regulate process. If this, then, say they, be a limitation law, it is a rule of property, and under the 34th section of the judiciary act, it is a rule of decision for the courts of the U. States.
The case of Baldwin vs. Phillips, before Justice Baldwin, arose on a statute of Pennsylvania, which limits the lien of a judgment to five years, unless revived by scire facias. The court says, “the terms of this law extend to all judgments, in any court of record within this State, which are broad enough to take in *583 those of this court. Its object is declared to be, “to prevent the risk and inconveniences to purchasers of real estate, by suffering judgments to remain a lien for an indefinite length of time, without any process to continue or revive the same,” which apply in whatever courts such judgments are rendered. We cannot consider it as a mere process act; it is a part bf a great system of jurisprudence, for the safety and protection of purchasers,” &c. and the court in that case, gave effect to that act. See Bald. Rep. vol. 1, page 274; &c; Upon the whole, then, we are constrained, upon authority as well as principle, to hold that the prior judgment creditors in the federal court, not having procured a certified copy of their judgments to be registered, conformably to the statute, in the county of Williamson, the county of the domicil of their debtors, must be postponed to the subsequent judgment creditors, who obtained their judgments in the circuit court for the county of Williamson. As to the remaining question presented for discussion in the claim of Robert M. House to a preferable and exclusive lien founded upon the ground, that although he has a joint judgment against both Baldwin and Anderson, yet jt arose originally from the separate debt of Anderson, while the other judgments are founded upon- partnership transactions; that question may be very brifiy disposed of. This is not a case where there are two funds before the court to be distributed, and where the court are called upon to adjust and settle, upon grounds of general equity, the rights of the parties so as to attain equality.
The simple question is, whether, when one has a judgment against a member of a partnership concern for his separate debt, and another has a judgment against the partnership, both constitute a lien upon the separate real estate of each partner. Of this no one can doubt. The act of 1789, ch. 57, declares that in all cases of joint obligations or assumptions of co-partners or others, suits may be brought and prosecuted on the same, in the same manner as if such obligations or assumptions were joint and several. Of course, for all the purposes of lien, there can be no difference between the joint and separate creditors of the individual partner, and whether in any given case, they can repel each other in the distribution of the joint and separate funds, will depend upon circumstances to be shown in the case, and upon the application to them of the general principles of equity.